IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:11-CV-00054-D

| | |
|---|---|
| RAY BRYANT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **MEMORANDUM AND** |
| v. ) | **RECOMMENDATION** |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the Court on the parties' cross motions for judgment on the pleadings [DE- 24 & 26]. Claimant also filed a response to the Commissioner's motion [DE-29]. Claimant, Ray Bryant, seeks judicial review of the Commissioner's denial of his applications for Disability Insurance Benefits ("DIB") and for Supplemental Security Income ("SSI"). After a thorough review of the record and consideration of the briefs submitted by counsel, it is recommended that Claimant's motion for judgment on the pleadings [DE-24] be **GRANTED**, that the Commissioner's motion for judgment on the pleadings [DE-26] be **DENIED**, and that the case be **REMANDED** for further administrative proceedings.

## STATEMENT OF THE CASE

Claimant protectively filed applications for DIB and SSI on May 4, 2009. (R. 35-36, 118-21, & 122-24.) He alleged disability beginning October 15, 2008, due to prostate cancer and high blood pressure. (R. 134.) On May 27, 2009, the application for SSI was denied because of claimant's monthly household income of $1,109.00 from social security, $247.00 from a pension, and $500.00 from his wife's wages. (R. 44.) Additionally, the application for DIB was denied initially (R. 50) and upon reconsideration (R. 54). Claimant then requested a hearing

before an Administrative Law Judge ("ALJ") (R. 66), which took place on August 3, 2010 (R. 19-34). On August 20, 2010, the ALJ issued a decision denying Claimant's application. (R. 7-17.) On January 4, 2011, the Appeals Council denied Claimant's request for review (R. 1-3), which rendered the ALJ's decision a "final decision" for purposes of judicial review. *See Walls v. Barnhart*, 296 F.3d 287, 289 (4th Cir. 2002) (noting that when the Appeals Council denies a request for review, the underlying decision by the ALJ becomes the agency's final decision for purposes of appeal). Claimant then commenced this action pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

### I. The Standard of Review and Social Security Framework

The scope of judicial review of a final decision regarding disability benefits under the Social Security Act, 42 U.S.C. § 405(g), is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *Walls*, 296 F.3d at 290; *see also* 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). This Court must not weigh the evidence, as it lacks the authority to substitute its judgment for that of the Commissioner. *Walls*, 296 F.3d at 290. Thus, in determining whether substantial evidence supports the Commissioner's decision, the Court's review is limited to whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his or her findings and rationale in crediting the evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process to be followed in a disability case. 20 C.F.R. § 404.1520. At step one, if the claimant is

2

currently engaged in substantial gainful activity, the claim is denied. If the claimant is not engaged in substantial gainful activity, then at step two the ALJ determines whether the claimant has a severe impairment or combination of impairments that significantly limit him or her from performing basic work activities. If no severe impairment is found, the claim is denied. If the claimant has a severe impairment, at step three the ALJ determines whether the claimant's impairment meets or equals the requirements of one of the Listings of Impairments ("Listings"), 20 C.F.R. § 404, Subpt. P, App. 1. If the impairment meets or equals a Listing, the person is disabled *per se*. If the impairment does not meet or equal a Listing, at step four the claimant's residual functional capacity (RFC) is assessed to determine if the claimant can perform his or her past work despite the impairment; if so, the claim is denied. However, if the claimant cannot perform his or her past relevant work, at step five the burden shifts to the Commissioner to show that the claimant, based on his or her age, education, work experience and RFC, can perform other substantial gainful work. The Commissioner often attempts to carry its burden through the testimony of a vocational expert, who testifies as to jobs available in the economy based on the characteristics of the claimant.

## II.    The ALJ's Findings

The ALJ proceeded through the five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520(a). The ALJ first found that Claimant had not engaged in substantial gainful activity since October 15, 2008, the alleged onset date. (R. 11.) The ALJ next found that Claimant suffered from the severe impairment of status-post prostatectomy. *Id.* He acknowledged that Claimant had complained of contact dermatitis, eczema, and chronic airway obstruction, but found that those impairments were not severe. *Id.* At step three the ALJ determined that Claimant did not have an impairment or combination of impairments that met or

3

medically equaled a Listing. (R. 12.) Next, the ALJ determined that Claimant had the RFC to perform a full range of light work. (R. 12-14.) At step four, the ALJ found that Claimant was able to perform his past relevant work as a sales attendant. (R. 14.) As a result, the ALJ found that Claimant was not disabled from the alleged onset date through the date of decision. *Id.*

### III. The Administrative Hearing

#### A. Claimant's Testimony

Claimant testified to the following at the August 3, 2010 administrative hearing. (R. 23-32.) Claimant graduated from high school and has no difficulty with reading, writing, or simple math. (R. 24-25.) He resides at his home with his wife and her mother. (R. 23-24.) Claimant last worked as a sales representative at Wal-Mart in 2008. (R. 24.) He initially worked in the grocery section, but was later moved to a different department because he was scratching his body due to eczema. (R. 25.) Prior to working at Wal-Mart, he worked at a textile mill hanging beams of cloth. (R. 30-31.) Claimant stopped working in 2008 and had been receiving unemployment benefits since that time. (R. 23.) When asked by the ALJ if he was "signing a statement that says that you're ready, able and willing to work," he responded that "I tell them certain jobs." *Id.* Claimant also admitted signing a statement indicating that he was not disabled with respect to a Medicaid application; however, he explained that he was confused at the time. *Id.* Claimant was also collecting social security and a pension. (R. 31-32.)

Claimant has eczema covering his entire body (R. 25), which he believes was caused by chemical exposure while working at the textile plant (R. 31). When his eczema "flares up" he gets lesions, resulting in itching, scratching, and bleeding, and it also omits a foul odor. (R. 25-26.) He can no longer work in his yard, because heat and sweat aggravate his eczema. (R. 28.) His eczema flare-ups are treated with medication. (R. 26.) Claimant also has acid reflux and

4

emphysema. *Id.* He had bronchitis the week before the hearing and has had pneumonia twice. *Id.*

Claimant had prostate cancer, for which he underwent surgery. (R. 27.) Two years after the surgery, he continues to experience urinary incontinence due to nerve damage. *Id.* His doctor estimated that Claimant would be "back to normal" within 12 to 15 months, but his condition at the time of the hearing had not improved post-surgery. (R. 27 & 29.) Claimant also experiences mood swings characterized by not wanting to do anything, and at times he considers hurting himself. *Id.* He used to socialize with friends at a barber shop and to play pool, but now he finds such activities difficult due to his mood swings. (R. 28.) Claimant attends church on Sundays when he is able, but can no longer sing in the choir due to his incontinence, restlessness, and fatigue. *Id.* His grandchildren assist him with lawn work and with caring for his dogs. *Id.*

Claimant has high blood pressure for which he takes medication. (R. 29.) He has difficulty sleeping, but does not know why. *Id.* He only sleeps three to four hours a night, napping mostly during the day. (R. 29-30.) Claimant smokes, but is cutting down, and he does not drink alcohol. (R. 30.) His eyes water, he sometimes has blurry vision in his left eye, and he hears ringing in his left ear. *Id.* Claimant experiences shortness of breath and chronic fatigue. *Id.* He does not know if the fatigue is related to depression and has not discussed depression with his doctor. *Id.* He feels like doing nothing, *id.*, and believes he is unable to work (R. 32).

### B. Vocational Expert's Testimony

Loretta Harrelson, a vocational expert, testified at the hearing. (R. 32-33.) She classified Claimant's past work as follows: beam racker in the textile industry, DOT code 681.686-010, heavy exertion level with an SVP of 2; garden worker or plant care worker, DOT code 408.364-

5

014, medium exertion level with an SVP of 3; and sales attendant, DOT code 299.677-010, light exertion level with an SVP of 2.

## IV. Claimant's Arguments

Claimant initially alleged the following errors: (1) that the ALJ failed to find Claimant's COPD and eczema to be severe impairments and failed to consider them in assessing Claimant's RFC; and (2) that the Appeals Council failed to give the opinion of Plaintiff's treating physician controlling weight. In his response to the Commissioner's motion, Claimant raised for the first time the additional argument that new and material evidence warranted remand.

### A. Evaluation of Severe Impairments

Claimant first contends that the ALJ erred in finding that his COPD and eczema were not severe impairments without providing any reasoning or citing to any evidence in the medical record. He also contends that the ALJ erred in failing to consider these alleged impairments in the RFC analysis. The Commissioner counters that Claimant's COPD and eczema were not severe impairments and that the ALJ's conclusion was supported by the medical record.

The ALJ stated the following regarding Claimant's COPD and eczema:

> While the claimant also complained of contact dermatitis, eczema, and chronic airway obstruction, these alleged impairments are not found to be "severe," as they either are not supported by objective signs, symptoms, or laboratory findings or no more than minimally affect his ability to perform work related activities. 20 CRF § 404.1508 and §416.908.

(R. 11.) There is little discussion regarding these alleged impairments. However, "[i]f there is substantial evidence to support the Secretary's decision then our inquiry must terminate." *Laws*, 368 F.2d at 642. Substantial evidence, in this context, is not "a large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), but instead is "evidence which a

6

reasoning mind would accept as sufficient to support a particular conclusion," *Laws*, 368 F.2d at 642. Here, the ALJ's determination is supported by substantial evidence.

Contrary to Claimant's assertion that the ALJ provided no reasoning in support of his conclusion that the impairments were not severe, the ALJ in fact provided two bases for his determination regarding Claimant's COPD and eczema: (1) that they are "not supported by objective signs, symptoms, or laboratory findings," or (2) that they "no more than minimally affect his ability to perform work related activities." (R. 11.)

A "severe impairment" is an impairment "which significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). In other words, "[a]n impairment is 'severe' unless it 'has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.'" *Wilson v. Astrue*, No. 4:07-CV-148-FL, 2008 WL 2019650, at *5 (E.D.N.C. May 9, 2008) (quoting *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir. 1984)). "As such, the 'severity standard is a slight one.'" *Id.* (quoting *Stemple v. Astrue*, 475 F. Supp. 2d 527, 536 (D. Md. 2007)).

Claimant specifically contends that his COPD makes it difficult for him to engage in work activities, because it limits his ability to walk and he can never be around dust, smoke or fumes. However, the medical records indicated that Claimant's COPD was well controlled by medication when he properly used his inhaler (R. 234, 244, & 336) and, while not dispositive, it is noteworthy that Claimant continued to smoke (R. 30). Furthermore, there is nothing in Claimant's medical treatment records to indicate that Claimant had difficulty walking. To the contrary, in April 2009, Claimant told his doctor that he could run for 10-15 minutes vigorously and was able to do heavy housework (e.g., shovel and spade soil and carry heavy objects). (R.

7

234.) During that same visit, the doctor's notes indicated that Claimant "feels well with minor complaints." *Id.*

With respect to his eczema, Claimant argues that it has been described by his doctor as "severe" and that he was forced to change departments at his last job due to his persistent scratching. Neither of these facts necessarily indicates that he has a "severe impairment" as defined in the regulations. Claimant has not indicated how his eczema limits his ability to do basic work activities and the record fails to evidence any such limitations. *See Hancock v. Astrue*, ___ F.3d ___, 2012 WL 19731, at *1 (4th Cir. 2012) ("The claimant has the burden of production and proof in Steps 1-4.") (citing *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992)). The fact that Claimant was transferred to a different department due to appearances does not indicate that he was physically unable to do work, and, in fact, he did continue to work in a different department until he stopped work due to his cancer diagnosis. (R. 25 & 134.)

Claimant has failed to cite evidence in the medical record to support any *limitation* caused by his COPD or eczema, and there is substantial evidence in the record to support the ALJ's conclusion that these were not severe impairments. *See Cobb-Leonard v. Astrue*, No. 3:10-cv-449, 2011 WL 4498876, at *5 (W.D.N.C. Sept. 8, 2011) (recognizing that the fact of a diagnosis says nothing as to whether a condition is a "severe impairment"). Therefore, the ALJ's finding that Claimant's COPD and eczema were not severe impairments was not error, as it was supported by substantial evidence.

Claimant also contends, in one conclusory sentence, that the ALJ erred in failing to consider these same impairments in the RFC assessment. As explained above, substantial evidence supports the ALJ's determination that Claimant's COPD and eczema no more than minimally impacted his ability to perform work, and Claimant has failed to cite to evidence in

8

the record that supports any limitation based on these alleged impairments. *See Martindale v. Astrue*, No. 1:09-cv-466, 2011 WL 1103770, at *12 (W.D.N.C. Feb. 24, 2011) (rejecting contention that ALJ erred by failing to account for claimant's back and knee conditions in the RFC assessment, where claimant failed to cite evidence in the record of limitations based on those conditions). Therefore, the ALJ did not err in failing to discuss Claimant's COPD and eczema in the RFC assessment.

### B. Treating Physician's Opinion

Claimant next contends that the Appeals Council erred in failing to give controlling weight to the opinion of Claimant's treating physician regarding his functional limitations. The Commissioner contends that the Appeals Council need not explain its decision to affirm the ALJ and that the treating physician's opinion was not supported by substantial evidence.

Claimant submitted new evidence to the Appeals Council in the form of a medical statement from his treating physician, Dr. Apolinario. The form consisted of a "Diagnoses" section, where Dr. Apolinario wrote "see attached list," and a "limitations and abilities" section, where Dr. Apolinario evaluated Claimant's functional capacity by circling various indicators. (R. 381-85.) The Fourth Circuit has recently explained the role of the Appeals Council upon receipt of new evidence:

> Confronted with such new and material evidence, the Appeals Council then "evaluate[s] the entire record including the new and material evidence." *Id.* § 404.970(b). After this evaluation, if the Appeals Council finds that the ALJ's "action, findings, or conclusion is contrary to the weight of the evidence currently of record," *id.*, it will grant the request for review and either issue its own decision on the merits or remand the case to the ALJ. *Id.* §§ 404.967, 404.977(a), 404.979. But if upon consideration of all of the evidence, including any new and material evidence, the Appeals Council finds the ALJ's action, findings, or conclusions not contrary to the weight of the evidence, the Appeals Council can simply deny the request for review. Contrary to [claimant's] contention, nothing in the Social Security Act or regulations promulgated pursuant to it requires that the Appeals Council explain its rationale for denying review.

9

*Meyer v. Astrue*, 662 F.3d 700, 705 (4th Cir. 2011). Although the Appeals Council need not have explained why it failed to give Dr. Apolinario's opinion controlling weight, this Court must consider the record as a whole, including the new evidence presented to the Appeals Council, to determine whether the decision is supported by substantial evidence. *Id.* at 707.

In the present case, the medical record does not support the restrictions noted by Dr. Apolinario and he fails to cite any basis for those restrictions. For example, Dr. Apolinario noted that Claimant could lift only five pounds on an occasional or frequent basis, that he could only occasionally lift his arms over shoulder level, and that he could never stoop or balance. (R. 381.) There is no readily apparent support in Dr. Apolinario's treatment notes for such restrictions, and Claimant did not testify regarding any such limitations. A treating physician's opinion is entitled to controlling weight only if it is supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with the other evidence. *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996). Therefore, it was not error for the Appeals Council to not give controlling weight to the opinion of Claimant's treating physician and to affirm the decision of the ALJ.

### C. New and Material Evidence

Subsequent to the claim at issue in this case, Claimant filed a second claim for DIB, and on July 12, 2011, he was awarded benefits. Pl.'s Reply, Ex. 1 [DE-29-1]. Claimant was determined to have been disabled as of August 21, 2010, *id.*, which was the day following the issuance of the unfavorable decision in this case (R. 6). Claimant contends that the subsequent award of benefits is new and material evidence that warrants remand under sentence six of § 405(g). As noted above, this issue was raised for the first time in a response to the Commissioner's motion, and the Commissioner made no filing in response to this new issue.

10

Sentence six of § 405(g) provides that the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding[.]" 42 U.S.C. § 405(g). "Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome." *Smith v. Astrue*, No. 5:10-cv-219-FL, 2011 WL 3905509, at *2 (E.D.N.C. Sept. 2, 2011) (quoting *Wilkins v. Secretary, Dep't of Health and Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991)). "The new evidence must 'relate to the period on or before the date of the administrative law judge hearing decision.'" *Id.* (quoting 20 C.F.R. § 404.970(b)). However, "the new evidence need not have existed during that period, but rather must be considered if it has any bearing upon whether the claimant was disabled during the relevant period of time." *Id.* (citing *Wooldridee v. Bowen*, 816 F.2d 157, 160 (4th Cir. 1987)).

Courts in this district have recognized that a subsequent finding of disability can constitute new and material evidence that could change the outcome of the first decision, reasoning that a subsequent finding of disability "based on an onset date coming in immediate proximity to an earlier denial of benefits is worthy of further administrative scrutiny to determine whether the favorable event should alter the initial, negative outcome of the claim." *Id.* at *3 (concluding that a "second decision, which found plaintiff disabled as of four days after the first decision, constitutes new and material evidence that could change the outcome of the first decision") (citation omitted); *see also Laney v. Astrue*, No. 7:10-cv-174-FL, 2011 WL 6046312, at *2 (E.D.N.C. Dec. 5, 2011) (remanding case where the "second ALJ's finding of disability commencing only one day after the first ALJ's denial of disability is new and material evidence"); *Floyd v. Astrue*, No. 5:09-cv-323-D, 2010 WL 2326508, at *3 (E.D.N.C. Apr. 26,

11

2010) (concluding that subsequent finding of disability as of one day following prior determination that claimant was not disabled and discrepancies between the two decisions called into question "whether the ALJ considered all material evidence in the record before reaching his decision"), *mem. & rec. adopted by* 2010 WL 2326506 (E.D.N.C. June 8, 2010) (Dever, C.J.). However, in one case, the court determined that the new and material evidence standard was not satisfied by a subsequent favorable decision, where a six month gap existed between the issuance of the first decision and the disability date in the subsequent decision and the claimant provided no evidentiary basis for the subsequent decision. *Atkinson v. Astrue*, No. 5:10-cv-298-FL, 2011 WL 3664346, at *17 (E.D.N.C. July 20, 2011) (citing *Allen v. Comm'r Soc. Sec.*, 561 F.3d 646, 653 (6th Cir. 2009)), *mem. & rec. adopted by* 2011 WL 3664858 (E.D.N.C. Aug. 18, 2011) (case remanded on other grounds).

The present case is more akin to the *Smith*, *Laney*, and *Floyd* cases than to *Atkinson*. In *Smith*, *Laney*, and *Floyd*, as in this case, the claimants were subsequently determined to be disabled as of a date within close proximity of a previous determination that they were not disabled. *Smith*, 2011 WL 3905509, at *3 (four days); *Laney*, 2011 WL 6030079, at *1 (one day); *Floyd*, 2010 WL 2326508, at *1 (one day). In *Atkinson*, the claimant's subsequent date of disability was determined to be six months after the initial determination that the claimant was not disabled. 2011 WL 3664346, at *17. The magistrate judge in *Atkinson* recognized that the claimant's condition could have deteriorated in the interim or that there could have been some other intervening cause, such as a change in age, which could have accounted for the subsequent finding that the claimant was disabled. *Id.* Such is not the case here.

In the present case, there is no intervening gap during which time Claimant's condition could have deteriorated, as the ALJ issued his decision of no disability on August 20, 2010, and

12

the subsequent decision found Claimant disabled as of August 21, 2010. Additionally, Claimant was 63 at the time of the first decision and, thus, was already a "person of advanced age," which is the highest age category. 20 C.F.R. § 404.1563(e). Therefore, in this case, a change in age category could not be a basis for the subsequent determination. *See Smith*, 2011 WL 3905509, at *3 n.1 (noting that claimant's age classification did not change from first to second disability determination).

It is also noted that in *Atkinson*, the claimant relied only on the Notice of Award and did not provide underlying evidence, such as the second ALJ's decision, or even mention the impairments supporting the second decision. 2011 WL 3664346, at *15 n.12. Here, the Claimant provided the Notice of Award and no underlying support, but did allege in his brief that his "approved claim was based on his status post prostatectomy, severe eczema, COPD, and mental impairment," which are the same conditions considered in the first application. Pl.'s Reply at 5 [DE-29]. While Claimant's failure to include the subsequent decision certainly could preclude remand, as it did in *Atkinson*, the present case is factually distinguishable because of the six month intervening gap, as discussed above.

Accordingly, there is a "reasonable possibility" that the new evidence of a subsequent disability determination would change the outcome of the first proceeding. *Wilkins*, 953 F.2d at 96. Furthermore, the subsequent decision did not issue prior to the Appeals Council's denial of review, which constitutes good cause for failure to incorporate that evidence into the prior proceeding, as required by § 405(g). Therefore, it is recommended that the case be remanded pursuant to sentence six of § 405(g) for consideration of new and material evidence to determine whether Plaintiff was disabled prior to August 21, 2010.

13

## CONCLUSION

It is hereby **RECOMMENDED** that Claimant's motion for judgment on the pleadings [DE-24] be **GRANTED**, that the Commissioner's motion for judgment on the pleadings [DE-26] be **DENIED**, and that the case be **REMANDED** pursuant to sentence six of § 405(g) for consideration of new and material evidence to determine whether Plaintiff was disabled prior to August 21, 2010.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days from the date of receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

This the 10th day of February, 2012.

DAVID W. DANIEL
UNITED STATES MAGISTRATE JUDGE